here in the first case Good morning, your honors. May it please the court, Y. David Scharf of Morrison-Cohn on behalf of the appellant based in Avmikhon Lahara, we are handling this matter before this court pro bono. If a state court had issued an order barring a parish from enforcing an order of excommunication of one of its parishioners it would be a clear violation of the First Amendment. It really is no different here. While a Bethden is an arbitrable function and entity that can sit just like the AAA or JAMS and address civil disputes, it also has a very important religious function and which was implicated here. Couldn't you have just, couldn't you have filed a lawsuit in federal court alleging that the automatic stay violates the First Amendment and RFRA? The answer is yes, that could have been done but that wasn't something that was required to be done here because as the bankruptcy court found and as was argued by the appellee below the automatic stay applied and once the automatic stay applied we had an infringement of First Amendment rights by virtue of its application that the district court, that the bankruptcy court found barred the religious institution and the application of religious law addressing the concept of a syruv, a shunning which is strictly a religious function where members of a community, the ultra-orthodox sect, Hasidic sect in Rockland County has put together and has said we are going to have a tribunal to adjudicate our religious and secular matters. So just to follow up on Chief Judge Katzmann's question, what exactly are you challenging? We are challenging the application of the automatic stay and the enforcement of it to bar a religious tribunal from making decisions of religious law which was what happened here. Now in order to have standing to appeal for a bankruptcy court ruling uh... such cases as DBSD North America Inc. said in order to have standing to appeal for a bankruptcy court ruling an appellant must be a person aggrieved a person and I quote directly and adversely affected pecuniarily by the challenged order of the district of the bankruptcy court, correct? That is correct, your honor. Now you say that you've suffered a pecuniary harm because you need to hire a lawyer to petition the bankruptcy court to lift the stay, is that correct? That is one of the contentions, but the core contention... Could you help me there, where in your letter brief on standing did you raise this argument? With respect that we had a pecuniary interest? Your honor, it is not there, but that is why we focus primarily on the issue. So why isn't that waiver on that issue? Your honor, I would agree and we concede for purposes of the appeal that the pecuniary interest issue, we concede that there was no pecuniary interest. What we are saying though that the public policy which is another means of having a party agreed status is heavily implicated here because... Could I ask you that, just on that point, you're talking about the public interest exception? Yes, your honor. So where in your letter brief did you raise that argument? Your honor, that was also not raised in our letter argument. It's very hard for us to resolve questions where the briefing isn't there, where it's not been raised. Your honor, the issue of when we came before the district court, obviously as this court is aware of the history of the matter, the issue, we jumped straight into the issue of the harm and the free exercise implications here. However, when the issue, the district court in its decision went straight to the heart of addressing the fact that we had no pecuniary interest, which we acknowledge. However, the public interest is something that no different than the bankruptcy court trustee, no different than the SEC, when who is in a better position to address an issue before this court where there has been an infringement of a first amendment right, a fundamental right. Are there any cases though that recognize this public interest aspect outside the context of governmental entities such as a U.S. trustee or the SEC? Is there anything that goes beyond that in those two cases? No, your honor, but however, when we're dealing with the fundamental issues such as the free exercise and the first amendment, the court should be looking at who is in the best position to address this issue. Here we have a bankruptcy court order that goes right at the heart and says you religious tribunal, you cannot exercise your authority, your gatekeeping function in the community to be able to govern the norms of your community under religious doctrine and we're going to say you're void ab initio and you're barred from going forward. This is not a matter of where like you have two litigants before the AAA where there's an adverse decision that comes out of it and you would have a situation. You're not barred from making a general challenge. I mean you just I think acknowledge at the very beginning of this conversation that you could have gone directly to district court and sued. That is correct, your honor. You took a different route and that route precludes people who are not or parties that are not persons aggrieved from having standing. But your honor, that assumes the fact that the pecuniary interest standard is the only way to look at... So why should we extend the public interest standard beyond a government party? Because what we're then saying is that a bankruptcy court can abridge the free exercise of religion in a way that no other court can. An article three court wouldn't have been able to do that and say no you can't come to protect that interest but here a bankruptcy court is somehow because we have a court-created pecuniary interest standard to the party aggrieved is now being given license to not have the first amendment protected in the most fulsome and wholesome way that it would otherwise be capable of being affected in any other court of the land. We are in essence, and it is, and it also is in line with the pecuniary interest standard which was intended to have people, and I recognize I have two seconds left and I'll finish with this point, the pecuniary interest standard was designed to minimize the congestion and the interference with the effectuation of the bankruptcy court. By having any litigant before a religious tribunal be able to come before this court as opposed to the tribunal itself which is charged with that gatekeeping function would create the multiplicity of litigation that the pecuniary interest rule was designed to protect. Thank you, sir, you'll have three  in rebuttal. Thank you, Your Honor. Good morning, Your Honors. We believe that this case, although interesting, is quite simple. The counsel started by saying nobody would argue if somebody was excommunicated from a religious sect, but I don't think that's the truth, I don't think that's correct under the law. What if the excommunication was because the person was of color or because the person was of a particular gender or because the person was disabled? So I don't think you can just assert a general rule that under no circumstances can a religious practice be contested or can be prohibited by the court. Here at the statute that we have is a simple statute. Once a bankruptcy petition is filed, nobody can commence an action against a debtor. Now, they had remedies, the appellants, they had remedies. The court's already pointed out they could have sued to do that. They could have brought an action to vacate the automatic stay. They could have brought a motion to vacate the stay to the court. Judge Drain would have considered their constitutional argument and decided whether or not it should be vacated. In fact, it's not on the record, but with respect to the contemptors, they actually brought an action to vacate the stay so as to go to a different arbitration. I mean, part of the problem, of course, is that they're not even a party, technically. Yeah, but they could have moved to intervene, you know, on the grounds that there was a constitutional violation. They could have moved to vacate the stay. I'm saying part of the problem with the other side's argument is that they are not a party. Yes, of course. Can I just follow up on Judge Lodeo's question, though? The issue of the alignment of the parties here. Yes. The arguments made, it's just the contemptors that are before the court and might have standing, but the order itself applied to the religious tribunal, right? It said in its sixth order that any injunction by the tribunal is void ab initio and of no force or effect. So doesn't that bring the tribunal before the bankruptcy court as well? If the bankruptcy court is saying, you know, religious tribunal, you can't do that, then it applies more broadly than just to the individuals, to the contemptors, right? It clearly applies to any tribunal that would have issued an injunction. Let me know which tribunal we're talking about. As I recall, the court didn't specifically mention this tribunal. It just said any arbitration panel that had furnished a summons or the Jewish equivalent of it or an injunction was void ab initio. So if it's subject to the injunction, if the injunction is directed at the tribunal, why doesn't it have standing? How does it challenge that and say that you shouldn't have issued that against us? By doing one of the remedies that doesn't require a pecuniary loss. You don't dispute that it, you do not dispute, as I understand it, that they have Article III standing. I don't dispute that, right? And they could have commenced an Article III court action, you know, by claiming that our constitutional rights are violated. You can't break the law and then say we want to have a right to appeal when no right exists statutorily or by virtue of this court's prior rulings. Why shouldn't we have an exception in this case to this pecuniary harm requirement in the context of religious exercise? Because, first of all, I don't think it is a religious exercise. I think that the record shows it's not a religious exercise. I think what the record shows is that it simply is an attempt to... Assume that it's a religious exercise. If it is a religious exercise, I don't think that there should be an exception because it's a statute of general application and the religious tribunal has other remedies by which they can contest the ruling. They decided to take this path. They decided to do this before they moved to vacate the state. They decided not to bring a written mandamus or start an action in a district court. They can't now be heard to say that because we pursued a remedy which, clearly, under the law in this state, under the law in this circuit, doesn't permit them to do that. They made that choice. Hasn't this court acknowledged a public interest exception with respect to U.S. trustees? Of course. Right? Yes. So why isn't the debate, Dean, analogous to the trustee because they're representing interests of the Jewish community? Well, first of all, I don't think that they are the gatekeeper and they're representing the interest of these particular Kantemnors, who they're trying to represent, which, you know, which, of course, leads to a second prudential standing issue. But the reason you shouldn't expand the exception to the well-seated law in this jurisdiction is that you can't get into an argument about who is a gatekeeper or who's not a gatekeeper. Anybody that comes forward before the court and says we're a gatekeeper of X, Y, or Z religion, what if the tribunal that came before this court said we are a gatekeeper of a religion that requires the mutilation of girls when they reach five years old? And you can't issue an injunction against us doing that because, you know, we're the gatekeeper of our religion and our religion requires that. Look, we get embroiled in what counts and what doesn't count as a religion or religious activity all the time. And I take it that that's what you're telling us to be worried about. What I'm suggesting you'd be worried about is that where there is a situation, there is a purely economic dispute, which there is here. The adversary proceeding sought to recover funds that were allegedly stolen by foreign members of this congregation. It is purely economic. There is no religious aspect. To follow up on that again with Judge Lohe, would you say it's the Catholic Church, a church I'm a little more familiar with, and it's the Archdiocese of New York, and it decides to close a parish because it can't support it anymore? Yes. And the parish council of that particular parish is in a dispute with the archdiocese over whether it should be closed or not. How is that different from here? My guess is we would stay away from that and say, look, that's a matter for the archdiocese to resolve. We're not going to have civil courts get involved with that. How is that different here just because it's a bankruptcy case? No, it's not different because it's a bankruptcy case. It's different because of the circumstances under which it arises. In the case that Your Honor is talking about, it's a purely internal dispute amongst members of the religion. Here, we don't have it. Finances, though. Say we think the parish has got enough money to stay open. The archdiocese said we can't afford it anymore. How is that different from this, at least in the allegations? Because there's no statute that says that you can't decide particular issues other than in the court. There's no statute that says that you can't commence an action under those circumstances. There's no statute that says you can't commence an action against the archdiocese because you think that it shouldn't close its doors or terminate a parish. Here, we have a completely different situation. Here, we have a dispute in bankruptcy court governed by statute. And the appellants— Because there's no statutory exception to the religion clauses in the First Amendment, right? Correct. Statute doesn't make any difference. That's right. They override that. That's right. Why make a difference if it's— Because there's no First Amendment issue here, I don't think. Because it's a statute of general applicability. It's not targeted to a religion. And its effects are on everybody, not just the religion. The argument may be that under the statute, under the religious freedom statute, there may be some argument. But certainly not a First Amendment argument here. And I don't think— Aren't they—I mean, you are saying that this dispute really is not about religion, but it's about money, property. But isn't the dispute about, at least in part, whether the mere filing in this case violated Jewish law? So in that sense, isn't that a case that has to do with religion? I don't think so. Because here, the argument, the summons to the Jewish court didn't just say, come so we can discuss whether you violated Jewish law by commencing this action. The summons says, come and determine all disputes between us before this court. The only disputes that existed at that point in time was the congregation's attempt to recover money that was allegedly stolen from it. So what they're trying to do here is to shift my client's ability to have a trial on that issue before the bankruptcy court. It prohibits creditors who have no religious ties from being able to participate in that, if they wish, in the bankruptcy court. And all that it does is tries to shift to a tribunal that they obviously perceive as being more friendly. It's not a religious issue. It can't be that, for example, let's say that there was a religion that said that you have to murder every first child. And if you want an exemption for murdering your first child, you have to come to our arbitration panel. You can't go anyplace else. And then someone goes to a district court and says, wait a minute, they can't murder my first child. It's against the law. Under those circumstances, could the court not say to the religious panel, no, no, no, you can't determine that issue. We're going to determine that issue. Here, the economic issues that exist are strictly bankruptcy court issues, strictly bankruptcy court jurisdiction. There's no religious implications here. They have to comply with the law like everybody else in the world has complied with the law. And they have options. If they don't want to comply with the law, that is, they can't commence an action unless the stay is vacated, they can make an application to the district court. They can make an application to the bankruptcy court. But they can't just go ahead and start issuing summonses in violation of the stay and then say we have the right to do it because our religion says that this has to happen. So wouldn't we be in the same place if they had sought a vacature of the stay and that had been denied or a writ of mandamus and that had been denied? No, because if they're going to bring a writ of mandamus, it'll be an article three court and then they'll have a direct appeal. In the Ninth Circuit, are you familiar with the Fondler case? I am. And there the court said the person is aggrieved when an order of bankruptcy court, and I quote, diminishes their property, increases their burdens, or impairs their rights. Yes. Wouldn't impair their rights encompass free exercise claims? I think if you look at that case carefully, because the language later on in the case specifically upholds the financial injury requirement, I think what they were saying was that the violation of rights has to be an economic situation. Your inability to, for example, purchase a piece of property or something like that. Yes, that general language appears in the Ninth Circuit case, which of course is not binding on this circuit. But I don't think that if you look at it carefully that that was the context in which they were saying it. And unless the court has any additional questions, I will yield my time. Thank you. Thank you. Can I just ask you what's the status of the sanctions before you get started on your rebuttal? The status of the sanctions imposed by the bankruptcy court? You can address that, Your Honor, if you'd like. Yeah, I wouldn't be able to because I don't know, but it's all right with Chief Judge Katzmann to-  Yeah. Shall I answer that, Your Honor? Yeah. The sanctions hearing was scheduled by Judge Drain, and shortly before that, the monetary amount of sanctions was settled. What? A hearing was set by Judge Drain on the sanctions as against the contempt notice. Right. That was settled. The monetary amount was settled shortly before the hearing was to take place. The contempt notice had paid the fine, and Judge Drain approved the settled amount. They maintained their right to continue to appeal on whatever constitutional or religious freedom grounds- Sanctions aren't increasing every day then, right? Sanctions are done. Sanctions are settled. Thank you. We're obviously not dealing with murder and mutilation here. But the appendix at 110, when we look at the invitation, the hazmanah from the bezdim, clearly is directed to non-debtors, and it is directed to address issues of Jewish law for having commenced proceedings. That is a fundamentally Jewish law issue and implicates religious freedom. And the concept that this is a general application statute, while I agree with it, under the statutes are subject to the same type of scrutiny where there is a substantial burden imposed upon religion. The bankruptcy court order was directed and said two things, void ab initio, stay going forward. Avoiding the hazmanahs, the summonses, come before this court, and barring the exercise of saying to community members, it is not within our community standards, although it could be. Your adversary in connection, I take it, with this RFRA argument, says that you had a number of reasonable alternatives that you could have pursued, that your client could have pursued, to lessen the burden, so to speak. So the short answer to that is, I believe Your Honor hit on it, we would have ended up in no different situation. What RFRA requires— Why don't we require you to at least go through that? Because you don't know. Well, that is because what we need to—once we have a substantial burden on religion, what needs to happen is the least restrictive means of imposing that burden. So while there may be other alternatives, which have been pointed out, which Your Honor is asking me about, the RFRA requires we look for the least restrictive means. And the least restrictive means would be like—unlike—would be similar to the other exemptions under 362, there could be an exemption for religious matters, for religious institutions from having religious matters adjudicated. No, why isn't the least restrictive means at least requiring you in the first instance to seek a vacature of the stay or to seek a writ or to seek suit in district court, rather than having us decide whether there should be some constitutional exception to the automatic stay? Because that would impose a burden on a religious institution to hire counsel, file suit— Is that the sort of substantial burden that we've talked about in the context of RFRA? It is not, Your Honor. However, just because there are mere other alternatives, they could be equally burdensome. And I don't see how one becomes more or less burdensome. At the end of the day, we are—and we end up dealing with the very same constitutional challenge. And as it relates to the issue whether the Beth Din came before Judge Drain, and it's on page 153 of the appendix. There's an appearance put in, but as—if this Court—when this Court reviewed the appendix and the record before Judge Drain, I'm sure they noted that the Beth Din never got to be heard. Judge Drain, unfortunately, left the Court quite excised and upset about the fact that what was at core issue was whether or not children were going to be able to stay in the schools if their parents didn't adhere to the norms. And while perhaps upsetting, that is the core of religious exercise, whether or not they would be able to maintain and get a religious education within the school system when their That doesn't mean that they wouldn't be able to get a public school education. It didn't mean anything like that. However, Judge Drain—and I recognize my time and I'll conclude with this—Judge Drain never gave the Beth Din's counsel, Mr. Graubard, an opportunity to address the Court that day because he came out and he just issued his decision. Thank you both for your good arguments. The Court will reserve decision.